Creen, J.
delivered the opinion of the court.
The defendant was tried and convicted in the circuit court of Davidson county, under the 26th section of the act of 1829, ch. 23, of “fraudulently receiving stolen goods, knowing them to be stolen, with intent to deprive the true owner thereof.” It appeared in evidence, that a man by the name of Boon, lost four or five hundred dollars, it having been stolen from him by a negro slave, Bob, belonging to the mother of the plaintiff in error. The morning after the money was stolen, several of the neighbors were collected together, and among them the plaintiff in error; when Boon requested them “to watch the negroes, and endeavor to obtain the money, and keep it for his use, which they promised to do.” Afterwards, the plaintiff in error received the money from Bob, with a fraudulent intent to deprive Boon thereof, and he now asks a reversal of the judgment, on the ground that Boon authorized him to receive it. It is argued earnestly by the counsel for the plaintiff in error, that he had lawful authority to receive the money, and that therefore, he cannot be guilty of felony, but is only guilty of a breach of trust. To sustain the position, 2 East’s Crown *157 Law, 765, is relied on asplacing this construction on the acts of 3 W. and M. ch. 9, sec. 4: 5 Ann, ch. 31, sec. 5, and 22 G. III, ch. 58. This authority does not prove the doctrine to sustain which it is introduced. In order to understand it, we may remark, that the provisions of these statutes are not like ours. They provide, with but little variation of language, “that if any persons shall buy or receive any goods or chattels, that shall be feloni-ously taken or stolen from any other person, knowing the same to be stolen, he or they shall be,” &c. To constitute a receiver, under these statutes, it is “sufficient,” says the author, “if the (goods) be in fact in his possession, in any manner malo animo, as to favor the thief, or without lawful authority express, or to be implied from circumstances, as in the case after mentioned, determined by Mr. Justice Foster.” Now what was the case determined by Mr. Justice Foster, by which the author illustrates his meaning. Simply this: A widow was indicted for having in her possession divers pieces of canvass, marked with the King’s mark, she not being a person employed by the commissioners of the navy to make the same for the King’s use. Her defence was, that it was customary with persons entrusted with the King’s stores, to make sale of the old sails which were no longer fit for use; that the canvass produced in evidence, had long before been made up into table linen and sheeting; had been used publicly in the family before her husband’s death, and afterwards had been used in the same public manner by her up to the time of the prosecution. The only question was, whether the canvass had been purchased from the King’s officers or not. The counsel for the crown insisted, that to show it had been purchased, a certificate from the officer who sold it, as provided for by the act, was the only evidence that could be received. But Mr. Justice Foster said, this was too rigid a construction of the act; that though the certificate was not produced, the evidence offered was admissible; *158 and that, if the jury believed she came by the canvass without any fraud or misbehavior on her part, they should acquit her; and she was accordingly acquitted.
This case shows, that the lawful authority spoken of in the text, is to be understood as applying to an honest and lawful reception of goods. That the goods were stolen at all, was not established. The evidence repelled the idea that the husband had stolen them, and on the contrary, furnished a strong presumption that he had purchased them. If it had been shown that the husband had stolen the goods, and the defendant knowing that fact, had received them as part of his estate, although by ' act of law they came to her, yet she would have been guilty; for the judge expressly puts her acquittal upon the ground, that the jury should find she came to the possession of the linen without fraud or misbehavior on her part.
The rule, that to constitute a larceny the taking must !be against the consent of the owner of the goods, is attempted to be applied to this offence. There is no analogy between the two cases, so far as this question is concerned. To constitute larceny there must be a trespass in the taking. That cannot be, where the possession is obtained by the owner’s consent; nor could it be if the goods were lost, because they would not in such case, be in the owner’s possession, so as to make it possible a trespass could be committed in taking them. All that is said in the books, therefore, in relation to the consent of the owner to part with the possession of his goods, amounts only to this, that to make a taking larceny, there must be a trespass; and as there can be no trespass, where the party taking has the owner’s consent, so neither can there be a larceny. But as in this case no question about a trespass can arise, the doctrine about consent as applicable to larcenies, cannot be applied here. But independently of all this, our act of assembly, under which the plaintiff in error was convicted, excludes, by its *159 plain, full and minute provisions, the construction contended for. Under this act, the only enquiries are, whether the accused received the goods, knowing thep to he stolen, having at the time a fraudulent. intent to deprive the owner of them. These facts being established, all other enquiries are irrelevant. If therefore, the plaintiff in error had been expressly employed by Boon to get the mo-' ney for him, and instead of honestly doing so, he had fraudulently received it, with intent to deprive 'Boon of it, he would have been guilty under the act. The question whether a party he guilty or innocent, depends upon the intent with which the goods may he received. The danger in which it is said this construction will place the innocent, cannot exist; for if the intent be “fraudulently to deprive the owner” of his goods, all pretence to in-nocency or favor is removed. Stolen goods may be received, and yet the party receiving be innocent, for he may have an honest intent. So a man may slay another and be innocent; having no wicked purpose. The intent must in both cases be left to the jury, to he judged of from the evidence. There is no error, therefore, in the charge of the court, and the judgment must he affirmed. (a)
Judgment affirmed.

 Cassels vs. The State, 4 Yerger’s Rep.