Estell Gossett and Winford (Bobby) Johnson,
Plaintiff in Error, Respondent,

*v.*

State of Tennessee, Defendant in Error, Petitioner.

455 S.W.2d 585.

(*Knoxville*, September Term, 1969.)

Opinion filed May 22, 1970.

Petition to Rehear denied June 15, 1970.

GEORGE F. McCANLESS, Attorney General, PAUL E. JENNINGS, Assistant Attorney General, Nashville, and HARRY C. TEMPLETON, District Attorney General, Winchester, for petitioner.

O. W. McKENZIE, Dayton, for respondent.

MR. SPECIAL JUSTICE BOZEMAN delivered the opinion of the Court.

In a three-count indictment Gossett and Johnson were charged with third degree burglary, grand larceny and receiving and concealing stolen property with a value of more than One Hundred Dollars. The jury returned a not guilty verdict as to the first two counts but found them guilty of the third count, and their punishment was fixed at not less than three nor more than eight years in the State Penitentiary. The Court of Criminal Appeals reversed. The judges were of the opinion that there was no evidence in the record that the Defendants received the property from some third person, that all of the evidence is to the contrary, and that the State concedes that there is no direct proof in the record that the Defendants knew the property had been stolen or that they received it from a third person. From this point the Court reasoned that the essential elements prescribed in T.C.A. sec. 39-4217 are lacking in the evidence presented for conviction of the crime of receiving so the conviction of receiving stolen property was reversed. Under the holding of *Jones v. State*, 219 Tenn. 228, 409 S.W.2d 169, and particularly *Deerfield v. State*, 220 Tenn. 546, 420 S.W.2d 649, the case was remanded for a new trial on the single charge of concealing stolen property. The judges were

of the opinion that there was no direct evidence that the Defendants knew the property had been stolen. *Kessler v. State,* 220 Tenn. 82, 414 S.W.2d 115.

The Opinion of the Court of Appeals was filed prior to our Opinion in *Tackett v. State,* 223 Tenn. 176, 443 S.W.2d 450. We granted Certiorari in this case for the same reason Certiorari was granted in *Tackett* because of the apparent misunderstanding of the Court's Opinions in *Deerfield* and *Kessler;* also, to determine whether or not the rule pronounced in *Tackett* is applicable to the facts of the instant case.

In *Tackett v. State,* supra, we state:

"In *Deerfield* we held that where the only proof in the case was that the property had been stolen by Deerfield, he could not be convicted for the offense of receiving it. In *Kessler* we restated the objective test rule as to guilty knowledge of the theft, first adopted in this state in *Wright v. State,* 13 Tenn. 154, restating it in accordance with Wharton's Criminal Law and Procedure:

"That is, the existence of guilty knowledge is to be regarded as established when the circumstances surrounding the receipt of the property were such as would charge a reasonable man with notice or knowledge or would put a reasonable man upon inquiry which if pursued would disclose that conclusion." Wharton's Criminal Law & Procedure, Anderson, Vol. 2, p. 281, sec. 568.

In *Tackett,* the Court held that neither *Deerfield* nor *Kessler* had any direct application to the facts of that case. In *Tackett* we held another proposition applicable:

"While it is the rule as first held in *Wright v. State,* supra, and as restated in *Kessler,* that guilty knowledge is necessary to sustain a conviction for receiving and concealing stolen property, it must also be the rule, because logic and good judgment require it, that the unexplained exclusive possession of stolen property shortly after commission of the robbery may warrant a finding that the possessor has guilty knowledge of the larceny or robbery. And unless this exclusive possession of stolen property after larceny or robbery is accounted for in a straightforward, truthful way, and unless the jury finds the explanation reasonable and satisfactory, the jury would be warranted in returning a verdict of guilty of receiving and concealing stolen property."

This is in general accord with 76 C.J.S. Receiving Stolen Goods sec. 17b, Wharton's Criminal Evidence, Vol. 1, Chap. 4, Sec. 135; *Pearson v. United States,* 6 Cir., 192 F.2d 681 (1952); *Minor v. United States,* 8 Cir., 375 F.2d 170, certiorari denied 389 U.S. 882, 88 S.Ct. 131, 19 L.Ed. 2d 177 (1967).

The proof is that sometime between December 24, and 7:00 A.M. on December 27, in the year 1966, John Oster Manufacturing Company was forceably entered. An attempt was made to break into the Company's safe. Various windows had been broken and there existed footprints in the mud outside the building and muddy footprints inside the building. This occurred while Oster was closed for the Christmas Holiday and was discovered when the plant engineer appeared on the scene following which the local police were summoned. On that same day employees of Oster were cleaning up the premises sur-

rounding the building. In the process of clean-up, ten cartons of Oster merchandise were found in a wooded area approximately one-fourth mile as the crow flies and one mile by road from the Oster plant. No direct evidence was offered as to how or when the ten cartons were placed in the wooded area. The condition of the cartons is in dispute as to whether they had weathered or not and they were not offered in evidence by the State nor did the defense request that they be presented. There is no dispute over the fact that the cartons were clearly marked with the name John Oster Manufacturing Company and that the Defendants knew the identification. On behalf of Oster it was contended that the goods are owned by Oster and were stolen from Oster. The police officers who had been summoned, observed the cartons, marked each one for later identification and replaced them in the wooded area where they had been discovered. On the evening of December 27, about 7:30 P.M. the Defendants entered the dirt road which had a dead-end in the wooded area where the cartons were located. Defendant Johnson was driving the automobile. They loaded the cartons in the truck and back seat of the car. While driving on the dirt road they were stopped by police officers who had staked out the area. They were arrested and charged. The Defendants explanation was that they had been rabbit hunting from between 10:00-11:00 A.M. to 4:00-5:00 P.M. on December 27, over a wide area in the vicinity of the manufacturing plant. They contend that about 4:00 P.M. in the afternoon they entered the wooded area on foot, observed the cartons among other refuse and assumed that they had been discarded or abandoned. Defendants returned to their car and proceeded to their respective homes. After the evening meal

they met each other by chance without any prearrangement in downtown Dayton. After discussing the events of the day they decided to enter the dirt road and pick up the cartons which they did. Defendant Gossett denied that he had ever been in the manufacturing plant, but Defendant Johnson admitted that he worked as a painter for the contractor who built the plant and that his employment at the plant site ended about one month before the Christmas Holidays.

Both Defendants deny that they were guilty as charged and contend that they took possession of the cartons not knowing they had been previously stolen, believing the cartons had been thrown out with the other rubbish found in the area. The record reveals that the Defendants had been previously convicted of burglary several years ago and served seven months for that offense.

The presumption of innocence, which the law accords an accused prior to conviction, disappears and is replaced by a presumption of guilt which puts upon him the burden of showing upon appeal that the evidence preponderates against the verdict and in favor of his innocence. We may review the evidence only to determine whether it preponderates against the verdict and, in doing so, we must take the verdict as having established the credibility of the State's witnesses. The verdict will be disturbed on the facts only if the evidence clearly preponderates against it and in favor of the innocence of the accused. *Gulley v. State,* 219 Tenn. 114, 407 S.W.2d 186; *Jamison v. State,* 220 Tenn. 280, 416 S.W.2d 768, *Pryor v. State,* 217 Tenn. 695, 400 S.W.2d 700; *Monts v. State,* 218 Tenn. 31, 400 S.W.2d 722; *Patterson v. State,* 218 Tenn. 80, 400 S.W.2d 743; *Carroll v. State,* 212 Tenn.

464, 370 S.W.2d 523; *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173; *Kirby v. State,* 214 Tenn. 296, 379 S.W.2d 780; *Gann v. State,* 214 Tenn. 711, 383 S.W.2d 32.

■■ This Court has no authority to raise inferences nor to substitute its judgment upon proven facts for the judgment of the jury. Inferences to be drawn upon circumstantial evidence are for the jury and not for the appellate tribunal, and it is not the province of this Court to substitute its own inferences for those drawn by the jury. *Smith v. State,* 205 Tenn. 502, 327 S.W.2d 308; *Nichols v. State,* 200 Tenn. 65, 289 S.W.2d 849; *Liakas v. State,* 199 Tenn. 298, 286 S.W.2d 856; *Stanley v. State,* 189 Tenn. 110, 222 S.W.2d 384.

The jury found that the evidence did not support a conviction for burglary or larceny. "Larceny is the felonious taking and carrying away the personal goods of another." T.C.A. sec. 39-4202. T.C.A. sec. 39-4223 states "If any person come, by finding, to the possession of any personal property of which he knows the owner, and unlawfully appropriates the same, or any part thereof, to his own use, he is guilty of larceny, and shall be punished accordingly." The Court included in the charge to the jury the provisions of these Statutes.

■ There is sufficient evidence in the record to sustain a conviction under that charge if the jury had so found. The undisputed proof conclusively shows the Defendants in possession of the cartons within a few hours of the burglary. The jury evidently felt warranted in foregoing this verdict in favor of the receiving and concealing count because there was no direct evidence that the Defendants broke and entered and carried away the property and we must assume the jury refused to believe

that the Defendants just found it. This character of possession clearly warrants the inference in the absence of a reasonable and honorable explanation that the Defendants knew the property had been placed there even if they did not place it there themselves and they received it from the person who did place it there with guilty knowledge of its theft. Thus, it comes within the rule laid down in *Tackett v. State,* supra.

In *Williams v. State,* 216 Tenn. 89, 390 S.W.2d 234, the Court approved the following from *State v. Missio,* 105 Tenn. 218, 58 S.W. 216:

"It is not necessary to prove who stole the goods, nor the name of the party from whom taken; but it is necessary to prove the ownership, general or special, of some person, and the fact that they have been stolen from the true owner by some one, and have eventually been received by the defendant, knowing them to have been stolen, and with the intent on the part of the defendant to deprive the true owner thereof; and, when the ownership is laid in a certain person, it must be so proven."

It is sufficient if the Defendant knew that the property was stolen from the true owner by someone and eventually received by Defendant.

In *Liakas v. State,* 199 Tenn. 549, p. 552, 288 S.W.2d 430, the Defendant was charged with larceny, and receiving stolen property. He was found innocent on the first charge and guilty on the second. The stolen garments were found by the police officials in an Oldsmobile that was registered in the name of Mrs. Liakas. It was reasoned that the garments must have been placed in the car and the explanation of the Defendants as to their

possession of the stolen property was wholly unexplained. The Court cited, with approval 45 Am.Jr. (Receiving stolen property), Sec. 10, p. 392. "However, as evidence of a conflict of authority it is said on page 393:

'Accordingly, the prevailing American rule appears to be that an accused may be convicted of criminally receiving stolen property, even though he was a guilty participant in the stealing of it, where he took no part in the actual caption and asportation but participated only as accessory before or after the fact, or in a manner not involving his presence at the taking, even though made a principal in the larceny artificially, by statute."

The question is annotated in 136 A.L.R. 1095. Our own case of *Cook v. State,* 84 Tenn. 461, 465 [1 S.W. 254], apparently supports the above text."

\* \* \* \* \* \*

"\* \* \* While it is true as a general rule that 'a party guilty of stealing cannot be guilty of receiving the stolen goods', *Cooks* case, supra, it is said in the same case:

'In cases of this kind, where the party is found in possession of stolen property, and the proof shows his possession to have been a guilty possession, slight circumstances may authorize a jury to determine whether he has been guilty of the theft, or of receiving the property, knowing it to have been stolen.' "

In the instant case the explanation by the Defendants of the possession of the stolen cartons was found not satisfactory or reasonable by the jury. We will not disturb

the jury's verdict of guilty under these facts. The conviction is sustained.

We have considered the other Assignments of Error which were pretermitted by reason of the disposition made of the case in the Court of Criminal Appeals, and are of the opinion that they are without merit.

Having considered each assignment of error and the authorities cited in support thereof by the Defendants adversely to the Defendants, we now consider the grounds presented in support of a Motion to Strike the Petition for the Writ of Certiorari. We group them as follows:

1. That the Petition was untimely filed and was granted without the cause being set for argument.

2. That the effect of the Judgment of the Court of Criminal Appeals was to acquit the Defendants and, therefore, the State had no right of appeal.

On April 23, 1969, the Court of Criminal Appeals filed its Opinion in this cause. On May 22, 1969 Justice Humphreys extended the time for the filing of a Petition for a Writ of Certiorari to and including July 21, 1969. The Order was filed with the Clerk of the Court on May 26, 1969, more than thirty days after the filing of the Opinion of the Court of Criminal Appeals. Defendants contend that the Order granting extension of time entered more than thirty days after the Opinion was of no effect and the Petition filed after the forty-fifth day was nullity.

T.C.A. sec. 16-451 provides that the Order and Judgment of the Court of Criminal Appeals shall become final after the expiration of thirty days, from entry of the said Judgment. T.C.A. sec. 16-452 provides in relevant part:

"Petitions for certiorari to require the removal of any case from the Court of Criminal Appeals to the Supreme Court for review, shall be filed and docketed with the clerk of the Supreme Court within forty-five (45) days after the final order or judgment in the Court of Criminal Appeals. Provided however, the Supreme Court or any judge thereof, upon application, may extend the time for filing a petition for certiorari for an additional period of time not to exceed ninety (90) days after the entry of the final order and judgment as defined and entered in the Court of Criminal Appeals."

▆▆▆ These provisions are not inconsistent. T.C.A. sec. 16-451 provides for the finality of Orders and Judgments of the Court of Criminal Appeals and provides a time after which that Court can no longer act on matters presented to that Court. Pursuant to the statute, the Court retains jurisdiction for a thirty day period. T.C.A. sec. 16-452 provides for review of the Orders and Judgments of the Court of Criminal Appeals. This review is only upon application by the party aggrieved, said application for review being required to be filed within forty-five days unless the time is extended to a maximum of ninety days. Obviously, this Court has jurisdiction to act on any Petition filed within the forty-five days, and further this Court has the power to extend the time for filing the Petition when such application is made within forty-five days. Only this Court or a member thereof has this power. The provisions in this Statute are substantially the same as set forth in T.C.A. sec. 27-820 relative to the Court of Appeals.

When the Petition was granted it was set down for argument at the October term in Knoxville, as provided

by T.C.A. sec. 16-452. Apparently the Defendant was under the impression that there is a hearing at the time a Petition is filed to argue whether or not the Petition should be granted. Such reasoning is incorrect. The hearing occurs after the Petition has been granted.

With reference to the inquiry concerning the right of the State to appeal in criminal cases, we consider the following Statutes in addition to T.C.A. sec. 16-452 set out hereinabove:

T.C.A. sec. 40-3401 "Right to appeal.—Either party to a criminal proceeding may, with the exception stated in 40-3403, pray an appeal in the nature of a writ of error to the Supreme Court as in civil cases."

T.C.A. sec. 40-3402 "Right to writ of error—Either party may take the case to the Supreme Court by writ of error, in the same way that a writ of error may be sued out in civil actions."

T.C.A. sec. 40-3403 "No remedy to state on acquittal.— The state has no right of appeal or other remedy for the correction of errors, upon a judgment of acquittal in a criminal case of any grade."

Construing T.C.A. sec. 40-3401 (then Code Section 5245), the Supreme Court of this State held in 1868 that this section secures to the State the right of an appeal except when the defendant has been acquitted. *Nolin v. State,* 46 Tenn. 12.

In *State v. Malouf,* 199 Tenn. 496, 287 S.W.2d 79, upholding the right of the State to appeal from dismissal of a prosecution upon a plea of double jeopardy, the Court held that under T.C.A. secs. 40-3401 and 40-3403, "Reading the two sections together obviously it appears

that the only place in which the State is forbidden to appeal is when the defendant has obtained a 'judgment of acquittal'."

The same rule applies when the Trial Court sustains a Plea in Abatement to the indictment as in *State v. Felts,* 220 Tenn. 484, 418 S.W.2d 772.

The right of the State to appeal is based not only on the statutory ground referred to herein, but the fact that there is no acquittal when the Criminal Court of Appeals reverses the Trial Court. It follows that the reasons stated by Gossett and Johnson for striking the State's Petition are insufficient and without merit.

The Motion to Strike is denied.

The judgment of the Trial Court is affirmed.

DYER, CHIEF JUSTICE, CRESON, JUSTICE, and JENKINS, SPECIAL JUSTICE, concur.

McCANLESS, JUSTICE, not participating.

OPINION ON THE PETITION TO REHEAR

MR. SPECIAL JUSTICE BOZEMAN.

The Respondents have filed a Petition to Rehear in this cause insisting that the finding of the Court of Criminal Appeals that the Defendants were not guilty of receiving stolen property under the evidence introduced on the trial of the case was an acquittal of these two Defendants, therefore, being an acquittal, is not subject to review by this Court.

The same question was raised on Respondent's Motion to Strike the Petition for the Writ of Certiorari filed by the State. We answered that contention in our Original

Opinion holding. * * * "that there is no acquittal when the Criminal Court of Appeals reverses the Trial Court."

We can find nothing in the Petition to Rehear to change our reasoning as stated in the Original Opinion. No new authorities are cited in said Petition.

" 'A petition for rehearing should never be used merely for the purposes of rearguing the case on points already considered and determined, unless some new and decisive authority has been discovered, which was overlooked by the court.' *Nashville v. State Board of Equalization*, 210 Tenn. 587, 618, 360 S.W.2d 458, 472 (1962); Caruthers, History of a Lawsuit 508 (7th ed. 1951), and cases cited therein. See also Rule 32 (Rules of this Court), 209 Tenn. 785, 806-807." *Whitaker v. House* (1963) 213 Tenn. 61, 70, 372 S.W.2d 194, 198-199.

Nevertheless, we have reviewed our Original Opinion and reaffirm our holding set out therein.

The Petition to Rehear is hereby overruled and denied.

DYER, CHIEF JUSTICE, CRESON, JUSTICE, and JENKINS, SPECIAL JUSTICE, concur.

McCANLESS, JUSTICE, not participating.