John C. **SHEEHAN**, Plaintiff-Appellee,

v.

**DOYLE et al., Defendants-Appellants.**

**No. 75–1218.**

United States Court of Appeals,
First Circuit.

Argued Jan. 5, 1976.

Decided Jan. 30, 1976.

Albert L. Jacobs, Jr., New York City, with whom Jacobs & Jacobs, New York City, P. C., Owen F. Clarke, Jr., Sullivan & Worcester, Boston, Mass., Albert L. Jacobs, Mark H. Sparrow, and Bruce M. Collins, New York City, were on brief, for defendants-appellants.

Thomas E. Spath, New York City, with whom N. Dale Sayre, McLean, Boustead & Sayre, New York City, Robert J. Horn, Jr., and Kenway & Jenney, Boston, Mass., were on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

PER CURIAM.

In this appeal, Doyle questions the wisdom of our decision in *Sheehan v. Doyle,* 513 F.2d 895 (1st Cir. 1975). In that case, Sheehan had sought documentary discovery from Doyle, and the latter had defended on grounds that Doyle, a nonresident alien, was beyond the jurisdiction and venue of the district court. We sustained Doyle, but on the ground that 35 U.S.C. § 24 "does not confer jurisdiction upon the district court, act-

ing on its own, to grant Rule 34 discovery directly, whether against a nonresident alien or a resident citizen." 513 F.2d at 898. In this, we relied heavily on the *en banc* decision of the third circuit in *Frilette v. Kimberlin,* 508 F.2d 205 (1975). In the present proceeding, it is Doyle who seeks discovery; and, after being peremptorily turned down by the district court on the basis of our decision in *Sheehan v. Doyle,* he brings this appeal.

We first dispose of Doyle's argument that as the discovery he seeks is by a *subpoena duces tecum,* it is not precluded by our earlier decision. The thrust of that decision was that 35 U.S.C. § 24 provided for judicial subpoenas to be used in aid of contested Patent Office cases (including for purposes of broad-based Federal Rules discovery) but only to the extent permitted by the Commissioner of Patents. What we rejected, and this would apply as much in the present case as in the earlier one, was the use of the federal district courts "as alternative forums of first resort rather than as forums acting strictly in aid of the primary proceeding." 513 F.2d at 899. Thus the district court correctly interpreted our decision as ruling out administratively unauthorized * discovery of this nature.

Here, if discovery proceeds, it will be more of the free-wheeling discovery which the third circuit and this circuit have determined Congress did not mean to authorize. Indeed, the very nature of the discovery here sought points up our earlier objections. Doyle seeks to probe whether Sheehan was the actual inventor, and Sheehan argues that that issue is entirely irrelevant to a patent office interference. Since the discovery proceeding is totally separate from the interference, and since no one from the Patent Office is a party or has purported

---

* From the Patent Office's granting of several continuances to permit court-sponsored discovery, Doyle argues tacit Patent Office approval of these proceedings. However, until 1975, all circuits considering the issue had ruled that independent discovery of this nature was in order, and the Patent Office had every reason to feel that it was obliged to go along willy nilly. Thus we draw no inferences from any Patent Office continuances.

to outline the scope of discovery, the district judge would have to rule on this and similar contentions with little to guide him but the parties' conflicting ideas of what might or might not be deemed relevant by the Board of Patent Interferences. Plainly the issue of what is relevant to its own proceeding can best be determined, at least initially, by the administrative agency in question. For over 400 district judges scattered throughout the nation to attempt to rule on such questions in a vacuum scarcely seems sensible, and, as pointed out in *Frilette,* is a procedure without precedent elsewhere.

This brings us to whether or not we should abandon the construction of 35 U.S.C. § 24 that we adopted in *Sheehan v. Doyle.* We see no reason now to change our mind.** Plainly, as we were well aware last spring, § 24 admits of more than one reading. But for reasons stated both in *Frilette* and our own opinion, we can see little sense in the sort of proceeding that a contrary interpretation has generated. Were the legislative history and statute clear, we would have no recourse; but the legislative history is totally devoid of any indication that Congress had in mind such an anomalous and unusual result, and we are unwilling to settle for what we perceive to be a fundamentally unsound approach where an equally or more persuasive interpretation of the statute exists.

We regret the uncertainty which a circuit split creates. There are, however, possible remedies. The Supreme Court may think it desirable to terminate the divergent interpretations that now exist. Alternatively, other circuits may follow the third circuit in abandoning the earlier construction. And the Commissioner of Patents, exercising such powers as he now has, may find that he is able to contribute to clarification of the situation. Finally, of course, Congress may by legislative enactment make clear its wishes in this unsettled area.

*Affirmed.*

** See Note, *Discovery in Patent Interference Proceedings,* 89 Harv.L.Rev. 573 (1976), supporting our reading of the statute and view of the statutory history.