IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville June 25, 2019

**ADAYSE GADDY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
No. 2012-C-2666     Seth Norman, Judge

**No. M2018-01272-CCA-R3-PC**

The Petitioner, Adayse Gaddy, appeals from the Davidson County Criminal Court's denial of his petition for post-conviction relief from his 2015 guilty plea to possession with the intent to sell or to deliver less than one-half gram of cocaine, for which he is serving a ten-year sentence. The Petitioner contends that he received the ineffective assistance of counsel and that his guilty plea was unknowingly and involuntarily entered. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Melissa Bourne (on appeal) and Kara L. Everett (at post-conviction hearing), Nashville, Tennessee, for the appellant, Adayse Gaddy.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Assistant Attorney General; Glenn Funk, District Attorney General; and Dan H. Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the Petitioner's January 9, 2015 negotiated guilty plea as a Range III, persistent offender to felony drug possession in exchange for a ten-year sentence. One count of resisting arrest was dismissed pursuant to the plea agreement.

**Guilty Plea Proceedings**

At the guilty plea hearing, the State's recitation of the facts was as follows:

[O]n June the 28th of 2011, around 9:00 p.m. in the evening, officers from the Metro Nashville Police Department initiated a traffic stop on a car for speeding. It was determined that Mr. Gaddy was the driver of the car. He was asked to exit the vehicle and agreed to a consent to search the car and his person. During that search the officers located a quantity of cocaine in a bulge in his pants, and this quantity of cocaine was individually packaged.

Although the Petitioner was charged with possession with the intent to sell or to deliver one-half gram or more of cocaine, the plea agreement permitted the Petitioner to plead guilty to possession with the intent to sell or to deliver less than one-half gram. The agreed-upon sentence was ten years' confinement at 45% service as a Range III, persistent offender.

The forty-two-year-old Petitioner told the trial court that the State's recitation of the facts was "basically" true and that he understood the offense to which he was pleading guilty. The court advised the Petitioner of his rights to a jury trial, to counsel, to confront and cross-examine witnesses at a trial, to present witnesses at a trial, to maintain his innocence, to remain silent, and to an appeal. The Petitioner told the court that he understood these rights. The Petitioner told the court that he did not have any mental illness and that he was not under the influence of drugs or narcotics that might impair his ability to understand the proceedings. The Petitioner said he was satisfied with counsel's representation.

At the trial judge's instruction, the Petitioner reviewed the plea agreement. Afterward, he identified his signature and said he signed the agreement freely and voluntarily. He said that he and counsel reviewed it before he signed it and that he understood it.

## Post-Conviction Proceedings

On December 28, 2015, the Petitioner filed a post-conviction petition, alleging, in relevant part, that he received the ineffective assistance of counsel and that his guilty plea was unknowing and involuntary.

Counsel testified that he was appointed to represent the Petitioner, that he filed a motion to suppress evidence, that the motion was denied, and that he negotiated a plea agreement with the prosecutor. Counsel said that the Petitioner was stopped by the police for speeding, which provided probable cause for the Petitioner's detention. Counsel said, though, that the officer instructed the Petitioner to get out of the car and that, at some point, a bag of cocaine was found on the pavement near where the Petitioner stood. Counsel said that the basis for the motion to suppress was that the police had detained the Petitioner for an excessive amount of time and that the Petitioner should have been cited

-2-

for speeding and released. Counsel questioned whether reasonable suspicion or probable cause supported the officer's instructing the Petitioner to get out of the car and any subsequent search. Counsel recalled that the officer detained the Petitioner, rather than issuing a speeding citation, because the Petitioner had previous drug-related convictions. Counsel said that he informed the Petitioner that the trial court had denied the motion to suppress, that the Petitioner requested counsel file an interlocutory appeal, and that counsel determined no legal basis supported an appeal pursuant to Tennessee Appellate Procedure Rule 9. Counsel said that he and the Petitioner discussed counsel's decision not to file an interlocutory appeal, despite the Petitioner's insistence that an appeal be filed.

Counsel testified that he did not dispute that, pursuant to the plea agreement, the Petitioner pleaded guilty as a Range III offender to felony drug possession in exchange for a ten-year sentence at 45% service. Counsel said that at the time of the guilty plea hearing, the Petitioner was serving a twelve-year sentence as a Range II offender and that the Petitioner's ten-year sentence was to be served concurrently with the twelve-year sentence. Counsel did not recall telling the Petitioner that the release eligibility date for the twelve-year sentence might change to 45% service based upon the Petitioner's pleading guilty as a Range III offender in this case.

On cross-examination, counsel testified that the bag found at the scene contained approximately twenty grams of cocaine. He said that the Petitioner resisted arrest, ran from the officer, or "tussled" with the officer. Counsel did not dispute that the Petitioner was charged with a Class B felony but pleaded guilty to a Class C felony and said that the Petitioner faced a possible Range III sentence for the Class C felony of ten to fifteen years at 45% service. Counsel said that he advised the Petitioner that the State had extended a good offer and that the Petitioner should accept it. Counsel agreed that if the Petitioner had been convicted of the charged offense at a trial, the Petitioner faced a possible thirty-year sentence as a Range III offender.

The Petitioner testified that he was stopped by the police for speeding, that he provided the officer with his license, registration, and insurance, that the officer returned to the police cruiser, that the officer returned five or six minutes later, and that the officer "demanded" he get out of the car. He said that although the officer said he was driving forty-seven miles per hour in a forty-mile-per-hour zone, the officer never issued a speeding ticket. The Petitioner thought the officer "profiled" him and that the officer had illegally seized and searched him. The Petitioner said that counsel did not challenge the validity of the traffic stop and that, as a result, the trial court denied the motion to suppress. He said that if counsel had obtained a favorable outcome at the suppression hearing, the case would not have "come to a plea agreement."

The Petitioner testified that he wanted counsel to appeal the trial court's order denying the motion to suppress but that counsel "gave [him] the run-around." The Petitioner said that counsel did not want to appeal because counsel did not think the appeal would have been successful. He said that he would not have pleaded guilty if counsel had appealed the denial of the motion to suppress. He said that he wanted to appeal because he wanted to know if the officer violated his constitutional rights and that he did not enter a knowing and voluntary guilty plea because counsel did not seek appellate review of the denial of the motion to suppress.

The Petitioner testified that counsel advised that accepting the plea offer would not impact the amount of time he served in confinement relative to the twelve-year sentence. The Petitioner said that if he had not pleaded guilty, he would have "flattened" his twelve-year sentence between January and March 2017. He said, though, that after he pleaded guilty, the ten-year sentence "became the biggest sentence" and that he would complete his sentence in 2021. The Petitioner said that counsel did not explain the "time computation" and that if counsel had explained it, he would not have accepted ten years at 45% service. He said counsel's advice was wrong.

On cross-examination, the Petitioner testified that he was serving a sentence on community corrections when he was stopped by the police for speeding and that he was not permitted to possess, use, and sell cocaine. He said that in 2008 he began serving the twelve-year-sentence on community corrections and that in 2012 he returned to prison for violating the conditions of his release. He agreed that he had accumulated service credits of four years on community corrections and four years in confinement and that he had approximately three years remaining, depending on any sentencing credits. He said that the "time sheets" would reflect that he was not eligible for release until 2021 but did not present them to the post-conviction court.

The post-conviction court denied relief. The court found, after reviewing the record, that the Petitioner was initially charged with possession with the intent to sell or to deliver one-half gram or more of cocaine and misdemeanor resisting arrest but that the Petitioner pleaded guilty to the reduced offense of possession with the intent to sell or to deliver less than one-half gram of cocaine and that the resisting arrest charge was dismissed. The court found that the ten-year sentence at 45% service was ordered to be served concurrently with the twelve-year sentence in an unrelated case.

Relative to the Petitioner's allegation that counsel provided ineffective assistance by failing to explain how the guilty plea and ten-year sentence would impact his parole eligibility for the twelve-year sentence, the post-conviction court determined that the Petitioner had earned "several years of sentence credits" while serving the twelve-year sentence on community corrections and that, as a result, the Petitioner had less time to serve in confinement before becoming parole eligible in connection with the twelve-year sentence. The court determined, though, that the sentence credits related to the twelve-

-4-

year sentence did not result in the Petitioner's receiving incorrect information from counsel. The court found that counsel advised the Petitioner about the consequences of proceeding to a trial and explained the plea offer. The court determined that the Petitioner failed to show that counsel provided the ineffective assistance of counsel.

Relative to the Petitioner's allegation that counsel failed to investigate the facts of the case adequately, the post-conviction court determined that counsel filed a motion to suppress the evidence, that the motion was denied, and that counsel refused to file an interlocutory appeal because counsel determined no legal basis supported an appeal. The court found that the Petitioner failed to show a basis for seeking an interlocutory appeal pursuant to the Tennessee Rules of Appellate Procedure. The court determined that the allegation was without merit and that the Petitioner did not receive the ineffective assistance of counsel.

The post-conviction court did not address the Petitioner's allegation that his guilty plea was involuntarily and unknowingly entered. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

## I.     Ineffective Assistance of Counsel

The Petitioner asserts that he received the ineffective assistance of counsel because counsel (1) did not file an interlocutory appeal after the trial court denied the motion to suppress, (2) gave incorrect advice regarding his release eligibility, and (3) failed to identify a "strong" suppression issue that might have led to the dismissal of the case. The State responds that the post-conviction court did not err by denying relief. The State asserts that appellate consideration of whether counsel failed to identify a strong suppression issue is waived because the Petitioner asserts the allegation for the first time on appeal.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687

(1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### 1.    Interlocutory Appeal

The record reflects that the Petitioner wanted counsel to appeal the denial of the motion to suppress but that counsel refused because counsel did not believe a legal basis supported an interlocutory appeal. The Petitioner, though, did not present evidence showing any legal basis supporting an interlocutory appeal. The Petitioner testified that he believed that the traffic stop was illegal because he did not receive a citation for speeding and that he was profiled. This is insufficient to show that this court would have granted a request for an interlocutory appeal and that the appeal would have been successful. *See Melvin Russell v. State*, No. W2007-01746-CCA-R3-PC, 2009 WL 321232, at *6 (Tenn. Crim. App. Feb. 9, 2009) (determining that counsel's failure to seek an interlocutory appeal was not deficient performance); *see also State v. Gawlas*, 614 S.W.2d 74 (Tenn. Crim. App. 1980); *Kenneth Weems v. State*, No. W1999-00033-CCA-R3-PC, 2000 WL 140462, at *2 (Tenn. Crim. App. Feb. 2, 2000), *perm. app. denied* (Tenn. June 19, 2000). The record supports the post-conviction court's determination that counsel did not provide deficient performance. The Petitioner is not entitled to relief on this basis.

## 2. Release Eligibility Date

The record reflects that at the time the Petitioner pleaded guilty in this case, he was serving a twelve-year sentence in confinement. The ten-year sentence in the present case was ordered to be served concurrently with the twelve-year sentence. The Petitioner testified that, in 2008, he began serving the twelve-year sentence on community corrections before his arrest in the present case and that his community corrections sentence was revoked in 2012. According to the Petitioner, he served four years on community corrections and had served four years in confinement since community corrections had been revoked. The Petitioner did not dispute that he had approximately three years remaining on his twelve-year sentence, depending upon any sentencing credits he had received. The Petitioner believed the "time sheets" showed that he was not eligible for release until 2021. However, the Petitioner did not present any supporting documentation.

In any event, counsel testified that he did not recall discussing with the Petitioner whether the release eligibility date for the Range II twelve-year sentence might change to 45% service based upon the Petitioner's receiving a Range III, concurrent ten-year sentence at 45% service in this case. The post-conviction court discredited the Petitioner's assertion that counsel provided inaccurate information. Generally, counsel's "failure to inform [a petitioner] of indirect consequences of a guilty plea normally does not" constitute the ineffective assistance of counsel. *Bautista v. State*, 160 S.W.3d 917, 921 (Tenn. Crim. App. 2004); *see Adkins v. State*, 911 S.W.2d 334, 350 (Tenn. Crim. App. 1994); *Jonathon Christopher Hood v. State*, No. M2005-01310-CCA-R3-PC, 2006 WL 1626934, at *6 (Tenn. Crim. App. June 9, 2006) (determining that counsel's failure to inform the petitioner about the "negative effect his plea agreement would have on a determinate sentence from a prior conviction" was not deficient performance); *see also* T.C.A. § 40-35-211(1) (2010) ("There are no indeterminate sentences. Sentences for all felonies and misdemeanors are determinate in nature, and [a] defendant is responsible for the entire sentence," after the application of authorized sentencing credits.). The Petitioner failed to establish that counsel provided deficient performance, and, as a result, the record supports the post-conviction court's determination that counsel did not provide the ineffective assistance of counsel.

## 3. Failure to Identify Suppression Issue

The Petitioner argues that counsel failed to identify a viable suppression issue related to whether the Petitioner provided valid consent to search his car and person. He argues that even if the officer's suppression hearing testimony that the Petitioner consented to a search of his person was credited, the Petitioner revoked his consent to search before the cocaine was found by attempting to "flee from the officer who was searching him." The Petitioner asserts that his "unequivocal act" to flee showed an intent

to revoke his consent and that the officer had no authority to "grab him in order to complete the search."

The Petitioner did not assert this allegation of ineffective assistance of counsel in his petition for relief or at the post-conviction hearing. He raises this issue for the first time on appeal and, as a result, the post-conviction court was deprived of the opportunity to provided findings of fact and conclusions of law. Therefore, the Petitioner has waived appellate consideration. *See Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996).

## II.     Involuntary Guilty Plea

The Petitioner asserts that his guilty plea was not knowingly and voluntarily entered because he did not understand the impact his guilty plea would have upon his parole eligibility date for the twelve-year sentence he was already serving. The State responds that appellate consideration of this issue is waived for failure to raise it in the post-conviction court.

The record reflects that the pro se petition alleged that his guilty plea was unlawfully induced and involuntary because counsel "never told him about the State's offer of four years." The pro se petition did not allege that the Petitioner's guilty plea was involuntary because he did not understand the indirect consequences of his guilty plea. However, the amended petition for relief alleged that the Petitioner's guilty plea was "not entered knowingly and voluntarily due to . . . [c]ounsel's failure to adequately explain the evidence in the case, legal merits, *processes and parole eligibility of his sentence* . . . ." (emphasis added). The Petitioner asserted that he was "not properly informed of the nature and consequences of his guilty plea[] with respect to his parole eligibility" pursuant to the plea agreement. We conclude that the Petitioner's allegation was adequately raised in the post-conviction proceedings, and we will consider whether the Petitioner is entitled to relief.

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31. A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent

collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Although the post-conviction court did not make specific findings of facts and conclusions of law regarding the voluntariness of the guilty plea, the record reflects that the Petitioner entered a knowing, intelligent, and voluntary guilty plea. The Petitioner's post-conviction testimony is the only evidence in the record showing that counsel provided inaccurate advice about the parole eligibility date for the twelve-year sentence. After reviewing the record, the post-conviction court discredited this testimony and determined that counsel advised the Petitioner about the consequences of proceeding to a trial and explained the plea agreement. Counsel testified at the post-conviction hearing that he did not recall discussing the Petitioner's parole eligibility date relative to the twelve-year sentence but that he advised the Petitioner the ten-year sentence at 45% service was to be served concurrently with the twelve-year sentence at 35% service. We note that a parole eligibility date is not a guaranteed date of release. *See* T.C.A. § 40-35-501(a)(1), (d), (e) (2010). We have already determined that counsel did not provide ineffective assistance by not advising the Petitioner about the impact his guilty plea might have on the unrelated twelve-year sentence. *See Christopher Hood*, 2006 WL 1626934, at *6-7 (determining that counsel's failure to advise the petitioner about the negative, indirect, and collateral impact his guilty plea might have on a sentence from a prior conviction does not constitute deficient performance and does not "misinform" a petitioner and that, as a result, does not result in an unknowing and involuntary guilty plea).

The guilty plea hearing transcript reflects that the Petitioner told the trial court that the State's recitation of the facts was "basically" true and that he understood the offense to which he was pleading guilty. The Petitioner understood his rights to a jury trial, to counsel, to confront and cross-examine witnesses at a trial, to present witnesses at a trial, to maintain his innocence, to remain silent, and to an appeal. The Petitioner told the court that he did not have any mental illness and that he was not under the influence of drugs or narcotics that might impair his ability to understand the proceedings. The Petitioner said he was satisfied with counsel's representation. The Petitioner reviewed the plea agreement and told the court that it reflected his signature and that he signed the agreement freely and voluntarily. He said that, before signing the agreement, he and counsel reviewed it and that he understood it. Notwithstanding the post-conviction court's failure to make specific findings of fact and conclusions of law, the record supports the court's denial of post-conviction relief. The Petitioner failed to prove he is entitled to relief on this basis.

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE